STATE of Wisconsin, Plaintiff-Respondent,

v.

Henry GRANDBERRY, Defendant-Appellant.

Court of Appeals

*No. 89-1293-CR. Submitted on briefs February 7, 1990.—Decided April 3, 1990.*

(Also reported in 456 N.W.2d 615.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dennis P. Coffey* of *Coffey, Coffey & Geraghty* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   Henry Grandberry appeals from judgments entered on jury verdicts convicting him of possessing cocaine with intent to deliver, in violation of secs. 161.16(2)(b)1 and 161.41(1m)(c)1, Stats., and operating an automobile after the revocation of his driving license, in violation of sec. 343.44, Stats. He also appeals from the written order denying his post-conviction motions. He raises one issue on this appeal, and argues that the trial court improperly refused to suppress the cocaine that police officers found in his automobile. We disagree and affirm.[1]

I.

Grandberry was arrested on the evening of December 19, 1986. At the pre-trial suppression hearing before the Honorable Frank D. Crivello, Harold Hampton, a city of Milwaukee police officer who was assigned that evening to a drug surveillance team, testified that he was told by a Milwaukee vice-squad detective that a "Henry

---

[1]Although Grandberry appeals from both convictions, he does not dispute the lawfulness of the driving-after-revocation conviction.

or James Grandberry" would be leaving the area of 25th Street and Hopkins Avenue in a blue or black Cadillac "with a large amount of cocaine." According to the detective, the car was in a tavern parking lot. The detective gave Hampton a partial description of the car's license plate.

When he arrived at the lot with his partner, Hampton saw a car matching the one described by the detective. Hampton ran a license check on the Cadillac. He learned that the car was registered to Henry Grandberry, Jr., and had been reported stolen. Hampton related this information to the vice-squad detective, and was instructed that "[i]f the auto and the suspect were to move" they were to stop the car. The detective told Hampton that the man would come from either the tavern itself, or from a rear apartment.

Hampton testified that about an hour and a half after setting up the surveillance, he saw a person leave the upper flat at the rear of the tavern, enter the Cadillac, and drive away. Activating the red light and siren on their unmarked squad car, Hampton and his partner stopped the Cadillac. Hampton testified that with the squad's spotlight shining on the Cadillac's rear window, he ran to the passenger side and saw Grandberry "stick his hand—his arm underneath the front driver's seat."

Grandberry got out of the Cadillac and identified himself as Henry Grandberry, Jr. He told the officers that the car was his, and that he had earlier reported it stolen. Hampton testified that Grandberry "became hostile" when his partner started to question him. "When he became hostile," Hampton testified, "I told [a police officer from a backup squad] who was coming to the front of the auto to check under the seat. [Grandberry] placed something under the seat." The officer found a

dark cloth pouch containing thirty-five packets of cocaine.

At the conclusion of the suppression hearing, the trial court found that the police officers had probable cause to stop Grandberry's car because it had been reported stolen. Although initially ruling that the legal stop itself validated the search, the trial court later recognized this to be error. Upon reconsideration, and without being requested to take further testimony, the trial court found the following facts in the course of an oral decision:

> —police officer Hampton was told that Grandberry would be leaving the area of 25th Street and Hopkins Avenue with a large amount of cocaine in his car;
> —Hampton was given Grandberry's partial description, and a partial description of his car;
> —Hampton learned that the car had been reported stolen;
> —after Grandberry drove away, the car was stopped by the police;
> —Grandberry became abusive when stopped;
> —a search under the seat turned up thirty-five packets of cocaine in a container.

Although the trial court did not specifically comment on Hampton's claim to have seen Grandberry secrete something under the front seat, there was no contrary testimony at the suppression hearing, and a finding consistent with Hampton's assertion is implicit in the trial court's legal conclusion that Grandberry's "behavior at the stop," in combination with the other circumstances, justified the officer "in looking under that seat."

Grandberry was tried before the Honorable Charles B. Schudson, and, as noted, was convicted of possessing cocaine with intent to deliver, as well as operating an

automobile after the revocation of his driving license. Judge Schudson denied Grandberry's two post-conviction motions to overturn Judge Crivello's decision not to suppress the cocaine.

## II.

The sole question presented by this appeal is whether the search under the driver's seat in Grandberry's car was lawful.[2] In making this determination, we must "uphold the trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence," but independently analyze the legal issue. *See State v. Guzy,* 139 Wis. 2d 663, 671, 407 N.W.2d 548, 552 (1987), *cert. denied,* 108 S. Ct. 494. Since Hampton was the only person to testify at the suppression hearing, and because the trial court's findings of fact track his testimony, they are obviously amply supported by the evidence. *Cf. State v. Friday,* 147 Wis. 2d 359, 370, 434 N.W.2d 85, 89 (1989) ("The drawing of an inference on undisputed facts when more than one inference is possible is a finding of fact which is binding upon an appellate court.").[3]

---

[2]Grandberry does not argue that the police acted unreasonably in stopping his car, which had been reported stolen. *See State v. Guzy,* 139 Wis. 2d 663, 675-677, 407 N.W.2d 548, 554-555 (1987), *cert. denied,* 108 S. Ct. 494 (police may stop an automobile to investigate if that is objectively reasonable under the circumstances known to the police at the time of the stop).

[3]Grandberry testified at the trial. He disputed Hampton's version of the events in a number of respects, claimed that the car's tinted windows were such that Hampton could not see through them, and denied trying to put anything underneath the driver's seat. He also denied knowing that there was cocaine in the car. Judge Schudson, who presided over the trial, twice denied post-trial motions to overturn Judge Crivello's decision not to

■ The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Under the Fourth Amendment, police officers may search an automobile, even though they do not have a warrant, if they have probable cause to believe that the automobile contains contraband, *see Carroll v. United States,* 267 U.S. 132, 147–159 (1925); *see also United States v. Ross,* 456 U.S. 798, 804–809 (1982); *State v. Tompkins,* 144 Wis. 2d 116, 137–138, 423 N.W.2d 823, 832 (1988), that is, if they have "facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained," *Ross,* 456 U.S. at 809. Issuance of a search warrant is justified if, "given all the circumstances" made known to the magistrate, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).[4] *See also*

---

suppress the cocaine. Any specific findings Judge Schudson may have made in that regard, however, are not in the appellate record.

[4]Grandberry does not argue that a different standard attends under the Wisconsin Constitution's analogue to the Fourth Amendment, Wis. Const. art. I, sec. 11. Other than minor grammatical differences, the two provisions are identical, and the Wisconsin provision has been consistently interpreted in accordance with the interpretation given the Fourth Amendment by the

*United States v. Barrett,* 890 F.2d 855, 861–863 (6th Cir. 1989). The issue here is whether there was probable cause for the search under the driver's seat in Grandberry's car. *Barrett* is persuasive authority that there was.

In *Barrett,* law enforcement officers had just finished searching the trailer of a known drug dealer for cocaine that had been earlier promised to a government informant when Barrett, who was unknown to the officers, drove up and asked for the owner by name. *Id.,* 890 F.2d at 857–858. Barrett was with his wife and seven-year-old child. *Ibid.* When one of the officers identified himself as an agent with the Tennessee Bureau of Investigation, and told Barrett that they had just arrested the drug dealer, Barrett's demeanor changed and he became "quite noticeably nervous." *Id.,* 890 F.2d at 858. The agent then approached the car, and noticed a blue pouch in Barrett's lap. He saw Barrett "nervously hand [ ] the pouch over to his wife in the passenger's seat so as to hide the pouch from [the officer's] sight." *Ibid.* At the officer's request, Barrett handed him the pouch. *Ibid.* He did not, however, give the officer permission to open the pouch, contending that it was not his. *Ibid.* The officer opened the pouch anyway and discovered it contained cocaine. *Ibid.* Relying on *Ross* and *Gates,* among other authorities, the Sixth Circuit Court of Appeals held that the circumstances, including "Barrett's furtive and nervous effort to conceal the pouch," 890 F.2d at 861, established probable cause for the warrantless search. 890 F.2d at 861–863. *See also Friday,* 147 Wis. 2d at 377–378, 434 N.W.2d at 92 (Friday's nervousness when he saw a narcotics officer in a tavern, and his attempt to have his car towed away, contributed

United States Supreme Court. *State v. Tompkins,* 144 Wis. 2d 116, 131–135, 423 N.W.2d 823, 829–831 (1988).

to the circumstances that added up "to a fair probability that drugs would be found in Friday's car."); *cf. Sibron v. New York,* 392 U.S. 40, 66–67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.").

■

As in *Barrett* and *Friday,* the circumstances here, taken in their "totality," *see Gates,* 462 U.S. at 230–232, support the search. Hampton, who ordered the search under Grandberry's seat, was told by the vice-squad detective that the car would be carrying a large amount of cocaine that night. Although law enforcement actions requiring probable cause are valid if the actions are in good-faith reliance on police-channel communications from a source that has facts sufficient to establish probable cause, *Desjarlais v. State,* 73 Wis. 2d 480, 491, 243 N.W.2d 453, 459 (1976), and the record here is silent as to the bases for the detective's belief, confirmation of the detective's information as to the car's description, where it was parked, where the suspect would emerge, what the suspect would do after he left the apartment, and the suspect's identity, all tended to corroborate the detective's assertion that the car was carrying cocaine. *See Gates,* 462 U.S. at 241–245. Thus, while the detective's order to Hampton cannot, in and of itself, support a finding of probable cause, *see id.,* 462 U.S. at 239, it gave meaning to Grandberry's surreptitious attempt to place something beneath his seat. Together with the car's official status as stolen, and Grandberry's later belligerence, Grandberry's apparent attempt to hide something under the seat gave Hampton the requisite probable cause to

order the search. *See Friday,* 147 Wis. 2d at 377–379, 434 N.W.2d at 92–93. The motion to suppress was properly denied.

*By the Court.*—Judgments and order affirmed.