STATE of Wisconsin, Plaintiff-Respondent,

v.

Larry Darnell BUCHANAN, Defendant-Appellant.†

Court of Appeals

*No. 92–1968–CR. Submitted on briefs May 4, 1993.—Decided July 27, 1993.*

(Also reported in — N.W.2d —.)

†Petition to review pending.

For the defendant-appellant the cause was submitted on the briefs of *Virginia A. Pomeroy*, assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *David J. Becker*, assistant attorney general, of Madison.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J.   Larry Darnell Buchanan appeals from a judgment convicting him of possession with intent to deliver a controlled substance contrary to secs. 161.16(2)(b)1 and 161.41(1m)(c)1, Stats. Buchanan presents two issues for our review: (1) whether the stop and frisk of Buchanan violated his Fourth Amendment right against unreasonable searches and seizure; and (2) whether the seizure of a baggie of cocaine from Buchanan's waistband exceeded the scope permitted under the Fourth Amendment. Because the stop and frisk, as well as the seizure of

cocaine, were not violative of Buchanan's Fourth Amendment protections, we affirm.[1]

## I. BACKGROUND

On August 2, 1992, Detective Joseph Link obtained a search warrant for the upper residence of a two-story house located at 2648 North 2nd Street in the city of Milwaukee. The warrant was obtained on the basis of information from a confidential informant that a number of juveniles were selling drugs there under the direction of a man by the name of Phillip Tolliver. According to the informant, drugs were being sold in the hallway, on the front porch, and in front of the home. People from inside the home were also offering "curbside service" to vehicles pulling up in front of the residence. All those dealing outside the residence were black gang members, although Link did not know which gang.

During a controlled buy made within seventy-two hours of the issuing of the warrant, the informant witnessed two individuals on the porch with guns. At the time of the controlled buy, Milwaukee Detective John Hagen observed black males on the porch of the residence and on the sidewalk in front of the residence.

The search warrant was executed on August 7, 1991, at approximately 6 p.m. Link was designated as an "outside containment officer," responsible for mak-

---

[1] Buchanan also alleges that his rights under Article I, section 11 of the Wisconsin Constitution were violated. The law of search and seizure under the Wisconsin Constitution, however, has been routinely and consistently conformed to the law developed by the United States Supreme Court under the Fourth Amendment. *See State v. Williams,* 168 Wis. 2d 970, 971, 485 N.W.2d 42, 46 (1992). Thus, a dichotomy in analysis in the present case is unnecessary.

ing sure that nobody entered or left the house and that nothing was thrown from the residence during the execution of the search warrant. Hagen's job was to stop individuals directly outside the residence and pat them down for weapons, in light of information received from the informant that some of the gang members carried guns.

Upon arriving at 2648 North 2nd Street, Hagen witnessed four black males, one of whom was Buchanan, standing on the sidewalk directly in front of the residence. As the police drove up, the men began walking westbound across the street. Hagen got out of his vehicle, immediately identified himself as a police officer, and ordered the four men to stop. Another officer, Detective Knickelbein, ordered the men to lie face down on the grass between the sidewalk and the street and placed handcuffs on the men.

Hagen had Buchanan sit upright and asked him whether he had any drugs or weapons on him. Buchanan answered "no." Hagen proceeded to pat Buchanan down and felt, what the detective believed to be, a plastic baggie containing rice in the defendant's waistband. Hagen did not believe that the object was a weapon. Hagen, however, stated that based upon his extensive training and experience in drug-related crimes, he immediately realized that this large bag of rice had cocaine in it. Hagen removed the baggie from Buchanan's waistband and found that it contained nineteen packages of what was later tested and found to be cocaine.

On August 9, 1991, a criminal complaint was filed, charging in part, that Buchanan had possession of a controlled substance which he intended to distribute. On March 13, 1992, Buchanan unsuccessfully challenged the pat-down search and subsequent seizure of

cocaine by police. He then pleaded guilty to the crime as charged. The trial court sentenced Buchanan to five years in prison, but stayed execution of the sentence, placing Buchanan on probation for five years with twelve months in the House of Correction as a condition of probation. Buchanan now appeals.

## II. DISCUSSION

### A. *The Stop and Frisk*

Buchanan first argues that the police did not have reasonable suspicion under the Fourth Amendment to stop and frisk him. We disagree.

As an initial note, we agree with the State that the stop and frisk issue is best resolved utilizing a two-part analysis as delineated by Chief Justice Heffernan:

> In *Terry* [*v. Ohio*, 392 U.S. 1, 24 (1968)], the majority stated a two-part test to determine whether the police officer acted within permissible, constitutional grounds for initiating the search: (1) whether the officer was rightfully in the presence of the party frisked; and (2) whether the officer suspected the party was armed and dangerous.

*State v. Guy*, 172 Wis. 2d 86, 104 n.5, 492 N.W.2d 311, 318 n.5 (1992) (Heffernan, C.J., dissenting on other grounds).

### 1. The Stop

In *Terry v. Ohio*, 392 U.S. 1, 22 (1968), the United States Supreme Court recognized the legitimacy of an investigative stop: "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possi-

445

bly criminal behavior even though there is no probable cause to make an arrest."

In *Adams v. Williams*, 407 U.S. 143, 145–46 (1972) (citations omitted), the Court provided the following description of a *Terry* stop:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

Finally, the Wisconsin Supreme Court has noted the following:

> To execute a valid investigatory stop, *Terry* and its progeny require that a law enforcement officer reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place. Such reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." These facts must be judged against an "objective standard . . . .["]

*State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830, 834 (1990).

■

Applying the above principles to the facts at hand, we conclude that Hagen had reasonable suspicion to stop Buchanan. The police had reliable information

that drug dealing was occurring at 2648 North 2nd Street. The informant had told the police that a number of black male juveniles ranging in age from fifteen to eighteen were selling drugs in the hallway of the premises, on the front porch of the premises, and in front of the premises at the curb, where they sold to people in vehicles that pulled over to the curb. When the police arrived to execute the search warrant that had been issued for the premises, they found four black males standing directly in front of the premises at the curb line of the street. Buchanan, who was eighteen at the time, was one of the four individuals. When the four saw the police, they immediately began moving westbound across the street away from the premises. Under the circumstances, and the objective standard mandated by *Richardson*, 156 Wis. 2d at 139, 456 N.W.2d at 834, Hagen did not act inappropriately in stopping Buchanan. Buchanan was directly in front of the drug house and met the description of those individuals dealing drugs from the curb at 2648 North 2nd Street.[2] It is reasonable that Hagen believed that Buchanan was possibly engaged in some criminal activity " the standard that must be met to justify an investigatory

---

[2] During the March 13 suppression hearing, Officer Hagen testified that he saw nothing that indicated that these individuals were selling drugs at the time he arrived on the scene. Further, Hagen testified that he had not linked Buchanan to any earlier drug sales in the community. However, as mandated by the supreme court, we apply an objective standard in reviewing the actions of law enforcement officers. Thus, it is the circumstances that govern, not the officer's subjective belief. *See Guy*, 172 Wis. 2d at 91, 99–100, 492 N.W.2d at 317 (based on the circumstances, officer had reasonable suspicion to believe that the defendant was armed even though the officer testified that the defendant did not appear to be armed).

stop. *See State v. Williamson*, 113 Wis. 2d 389, 401, 335 N.W.2d 814, 820 (1983).

### 2. The Frisk

As noted by the Wisconsin Supreme Court, "an officer must have a reasonable suspicion—less than probable cause, but more than a hunch—that someone is armed before frisking that person for weapons." *Guy*, 172 Wis. 2d at 95, 492 N.W.2d at 314. As noted by the United States Supreme Court, the constitutionality of a frisk is based on an objective standard:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27 (citations and footnote omitted).

In the present case, the police had two items of information tending to establish that those involved in the drug dealing at the premises to be searched were armed. The first was a search of those premises conducted two or three weeks earlier, at which time the police had recovered a shotgun, rifle, two handguns and a machine pistol. The second was the observation made by the police informant at the time he made the controlled buy at the premises. During the buy, the informant had observed two individuals on the porch of the premises, each with a handgun in his waistband.

Based on these two items, we conclude that Hagen had reasonable suspicion that those involved in drug dealing at the premises were armed.

## B. The Seizure

Buchanan argues that the seizure of the cocaine from his waistband was a violation of his Fourth Amendment rights. Specifically, Buchanan posits that "plain touch" seizures require that the incriminating character of the evidence be "immediately apparent," *see Horton v. California*, 496 U.S. 128, 136 (1990), and it is not plausible that Hagen immediately knew that the bag of rice was part and parcel of drug contraband.

The "plain touch" exception to the warrant requirement is an extension of the "plain view" doctrine. *See Minnesota v. Dickerson*, No. 91–2019, 1993 U.S. LEXIS 4018, at *16; *Guy*, 172 Wis. 2d at 101, 492 N.W.2d at 317. To pass muster under this doctrine, the following elements must be present:

> (1) the evidence must be in plain view; (2) the officer must have a prior justification for being in the position from which [he or] she discovers the evidence in "plain view"; and (3) the evidence seized "in itself or in itself with facts known to the officer at the time of the seizure, [must provide] probable cause to believe there is a connection between the evidence and criminal activity."

*Id.* at 101–02, 492 N.W.2d at 317 (citation omitted; brackets in original).[3]

---

[3] In *Minnesota v. Dickerson*, No. 91–2019, 1993 U.S. LEXIS 4018, at *20, the United States Supreme Court held that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity imme-

There is no issue as to the first two elements. Because Hagen felt the bulge in the waistband, the evidence was in "plain view." *See id.* at 102, 492 N.W.2d at 317. Because Hagen lawfully frisked Buchanan, Hagen had a lawful right of access to the object when he felt the bulge in the waistband. *See id.* Thus, the only issue subject to debate is whether Hagen immediately recognized the incriminating nature of the baggie. During the suppression hearing, Hagen testified that he immediately recognized the incriminating character of the plastic bag. He was convinced that it had cocaine in it. Given what the officer knew about the storage of cocaine, his conclusion about the character of the plastic baggie appears reasonable. Moreover, it was the sale of cocaine from the premises that had prompted the search warrant. Thus, it was the sale of cocaine in which the defendant was reasonably suspected of engaging in at the curbside in front of the premises. These facts taken in concert lead us to conclude that Hagen had probable cause to believe there was a connection between the baggie and criminal activity. Accordingly, we hold that Hagen lawfully seized the cocaine from Buchanan.

*By the Court.*—Judgment affirmed.

---

diately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . ." The ruling of *State v. Guy* is in complete harmony with *Dickerson.*