STATE of Wisconsin, Plaintiff-Respondent,

v.

Lamardus D. FORD, Defendant-Appellant.

Court of Appeals

*No. 96–2826–CR. Submitted on briefs March 7, 1997.—Decided May 15, 1997.*

(Also reported in 565 N.W.2d 286.)

For the defendant-appellant the cause was submitted on the briefs of *Suzanne Hagopian,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Eich, C.J., Dykman, P.J., Deininger, J.

DEININGER, J. Lamardus Ford appeals a judgment convicting him of second offense possession of THC, contrary to §§ 161.41(3r) and 161.48, STATS., 1993–1994. He claims that the trial court erred in denying his motion to suppress evidence because the search which produced the marijuana for which he was charged: (1) exceeded the scope of a *Terry*[1] pat down,

[1] *Terry v. Ohio,* 392 U.S. 1 (1968).

and (2) was not supported by probable cause. We agree and reverse his conviction.

## BACKGROUND

At 10:50 p.m., on July 20, 1995, Beloit police received an anonymous telephone tip that "four or five black males," not otherwise described, were selling drugs to motorists at a certain intersection. Two officers arrived at the location about thirty minutes later and saw Ford and three other black males seated on the hood of a car about seventy-five to a hundred feet from the intersection. One of the officers approached Ford, whom he knew, and as he did so, the officer smelled marijuana. He told Ford that he "smelled like marijuana."[2]

The officer then ordered Ford off the car, had him place his hands on the hood, and began patting him down. He did the pat down because he was investigating possible drug trafficking, he smelled marijuana, and it is his routine practice to conduct pat downs during street interrogations for safety reasons. During the initial pat down, the officer felt a large square wad of soft material in Ford's front pants pocket. When asked what it was, Ford said that it was money.[3] Ford became "jumpy" whenever the officer's hands approached the front of Ford's waist, and Ford even grabbed the officer's hand as it approached that area. Since Ford was not cooperating with the pat down

---

[2] The officer's testimony does not specify whether the odor was of burnt or burning marijuana or of the unburned substance. At another point, the officer testified that "*they* smelled like marijuana," and there is no indication in the record that the odor emanated exclusively from Ford or from a particular location on his person. (Emphasis supplied.)

[3] The money was later found to total $184.60.

and gave the impression that he intended to run, the officer took Ford in a "full Nelson" hold to his squad car, where he placed Ford's hands behind his back and handcuffed him.

Upon resuming the pat down, Ford was still "jumpy" whenever the officer approached the waistband of his boxer shorts, which was visible above Ford's jeans. The officer testified that it was a "common place for people to put guns and other contraband[,] down the front of their shorts." Although he had not felt a weapon or contraband, the officer asked Ford if he could look inside Ford's shorts. In response, Ford took a step back, whereupon the officer pulled out the waistband about one and one-half inches and shined a flashlight into Ford's underwear. The officer discovered two plastic bags of marijuana wedged between Ford's thigh and genitals. The officer removed the bags of marijuana and arrested Ford for possession of a controlled substance.

Ford moved to suppress the marijuana, but the trial court concluded that the officer had probable cause to search Ford's boxer shorts and denied the motion. Ford then entered a guilty plea and was convicted of possession of THC, as a second offense.

## ANALYSIS

Ford does not contend that either the investigatory stop or the initial pat down frisk were unreasonable. *See Terry v. Ohio*, 392 U.S. 1, 22–24 (1968); §§ 968.24 & 968.25, STATS. The State, in turn, acknowledges that the officer's actions in pulling out the waistband of Ford's boxer shorts and shining a flashlight into them exceeded the scope of a *Terry* frisk. *See State v. Guy*, 172 Wis. 2d 86, 100, 492 N.W.2d 311, 316–17 (1992), *cert. denied*, 509 U.S. 914 (1993). The record supports

both concessions. Thus, the only issue in this case is whether the officer's search can be justified on the basis that the officer had probable cause, under all of the facts and circumstances known to him, to conduct a more intrusive search of Ford's person.

■

Both the Fourth Amendment to the United States Constitution and Article I, section 11 of the Wisconsin Constitution guarantee citizens the right to be free from "unreasonable searches and seizures." In reviewing an order denying a motion to suppress evidence, an appellate court will uphold a trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989). "However, whether a seizure or search has occurred, and, if so, whether it passes statutory and constitutional muster are questions of law subject to de novo review." *State v. Richardson,* 156 Wis. 2d 128, 137–38, 456 N.W.2d 830, 833 (1990) (footnote omitted). Whether the facts and circumstances known to the officer constitutes probable cause is a question of constitutional fact which we also review independently of the trial court's conclusion. *See State v. Mitchell*, 167 Wis. 2d 672, 684, 482 N.W.2d 364, 368 (1992).

The State would have us uphold the search because "the totality of the circumstances which gradually emerged . . . created reasonable suspicion, and then probable cause, to believe that Ford had a weapon or contraband concealed in his underwear." In support of its argument, the State points to the officer having smelled marijuana on approaching Ford, and the fact that Ford was "jumpy" and attempted to evade a search of his waist area when the officer's hand approached Ford's waistband. *See id.* at 684, 482

N.W.2d at 368–69 (marijuana odor and smoke in vehicle gives probable cause for arrest of vehicle occupant); *State v. Grandberry*, 156 Wis. 2d 218, 225–26, 456 N.W.2d 615, 618–19 (Ct. App. 1990) (furtive action to conceal an object a proper factor in probable cause determination).

■

We do not dispute that, under certain circumstances, matters discovered during a pat down frisk permit a reasonable suspicion to ripen into probable cause that a crime has been or is being committed. The supreme court has recognized the "plain feel" or "plain touch" doctrine: when an officer touches or feels an object during a pat down which his or her training and experience lead the officer to believe may be contraband, the officer is justified in retrieving the item. *Guy*, 172 Wis. 2d at 100–02, 492 N.W.2d at 316–17; *Richardson*, 156 Wis. 2d at 148–50, 456 N.W.2d at 838–39. The rationale for the doctrine, however, is that the object is in the "plain view" of the officer's lawful touch, and thus no "search" has occurred, but only a seizure of evidence of criminal activity plainly sensed by the officer. *See Guy,* 172 Wis. 2d at 101, 492 N.W.2d at 317.

Here, however, the officer felt nothing resembling a weapon or contraband while frisking Ford. The plastic bags of marijuana subsequently found in Ford's underwear were not in the "plain view" of the officer's touch. The items were only discovered by a search of Ford's underwear based on the officer's belief that there might be a weapon or contraband concealed in the boxer shorts. Thus, the "plain feel" or "plain touch" doctrine is not available to the State in this case.

In *State v. Swanson*, 164 Wis. 2d 437, 444, 475 N.W.2d 148, 151 (1991), the supreme court "refuse[d]

to adopt an exception to warrantless searches based solely on the existence of probable cause."

In effect, the State requests this court to carve out an exception to warrantless searches based solely on probable cause with no resulting arrest. Presently, there exists no such exception to warrantless searches, and we decline to fashion one now. Allowing police to justify searches in the hope that the search would uncover something they could pursue would surely destroy the privacy of many individuals. . . .

Clearly, the purpose of the search here was a pat down frisk for weapons before the officers placed Swanson in the squad car to perform a field sobriety test. The nature and scope of the search extended beyond that of self protection. The *Terry* doctrine precludes reaching into a suspect's pockets during a frisk for weapons unless the officer feels an object that could be used as a weapon. Neither the officers nor the State argue in this case that the plastic bag of marijuana felt like a weapon that could have been used as an effective weapon. Therefore, the officer had no reason to reach into Swanson's pocket to obtain the marijuana. The search here exceeded its permissible scope and thus was constitutionally unreasonable under the fourth amendment and the principles of *Chimel* [*v. California,* 395 U.S. 752 (1969)] and *Terry* [*v. Ohio,* 392 U.S. 1 (1968)]. It follows then, that the subsequent arrest of Swanson for possession of a controlled substance was invalid because the controlled substance was the fruit of an illegal search.

*Id.* at 453–55, 475 N.W.2d at 155–56.

The State here seems to argue for the same exception rejected by the supreme court in *Swanson.* The cases cited by the State in support of its argument

are distinguishable from the facts of this case. In both *State v. Mitchell*, 167 Wis. 2d 672, 678–79, 482 N.W.2d 364, 366 (1992), and *State v. Grandberry*, 156 Wis. 2d 218, 220–21, 456 N.W.2d 615, 616–17 (Ct. App. 1990), controlled substances were discovered during searches of automobiles, not during intrusive body searches.[4] Also, in each of those cases, an officer had observed an obvious attempt to conceal an object from view. In *Mitchell*, the defendant had been arrested prior to the vehicle search. In *Grandberry,* the officer making the stop was acting on information from a detective that a specifically identified suspect in a described vehicle would be at a certain location "with a large amount of cocaine." Here, by contrast, the officer knew only that "four or five black males" of unknown description had been anonymously reported to have been selling marijuana in the vicinity of the stop thirty minutes earlier.

We therefore reject the State's argument that the holding of *State v. Swanson*, 164 Wis. 2d 437, 453–55, 475 N.W.2d 148, 155–56 (1991), may somehow be avoided on these facts. Since the search was of Ford's person, not a vehicle, and since no weapon or contraband had been "plainly felt" during the pat down, in order to sustain the search and seizure of the marijuana we must be able to conclude that the officer had probable cause to arrest Ford prior to pulling out his waistband and shining the flashlight down his

---

[4] Officers may search a vehicle without a warrant if they have probable cause to believe that the automobile contains evidence of a crime, even if the search is not incident to an arrest nor under exigent circumstances. *State v. Tompkins*, 144 Wis. 2d 116, 137–38, 423 N.W.2d 823, 832 (1988).

underwear.[5] We cannot do so. The purpose of the investigatory stop was to follow up on an anonymous tip regarding drug-selling activity in the vicinity. No specific suspicion had yet focused on Ford, except that he was near the intersection in question with a number of companions. And, while the officer testified to "smelling marijuana" when he approached Ford and the others, the testimony is unclear as to whether the odor emanated specifically from Ford or from any particular place on his person. Ford's "jumpiness" and evasive movements as the pat down approached the front of his waist are at best equivocal: we cannot say that a suspect's seeming reluctance to have the front of his boxer shorts patted at or below the waist is the equivalent of an observed movement to conceal an object from an officer's view.

We recognize that probable cause for arrest does not require that the evidence " 'giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not.' " *State v. Koch,* 175 Wis. 2d 684, 701, 499 N.W.2d 152, 161, *cert. denied,* 510 U.S. 880 (1993) (quoted source omitted). But it does require that the totality of the circumstances within the officer's knowledge at the time is such that a reasonable officer could conclude that guilt is " 'more than a possibility.' " *Richardson,* 156 Wis. 2d at 148, 456 N.W.2d at 838 (quoted source omitted). Here, the "totality of the circumstances" prior to the search inside Ford's underwear gave the investigating officer

[5] A search may immediately precede a formal arrest so long as the fruits of the search are not necessary to support the arrest. *State v. Swanson,* 164 Wis. 2d 437, 450–51, 475 N.W.2d 148, 154 (1991) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 111 (1980)).

749

a reasonable suspicion that Ford may be engaged in criminal activity sufficient to justify temporary questioning and a pat down for weapons, but no more. *See* §§ 968.24 & 968.25, STATS. (codifying holding in *Terry v. Ohio*, 392 U.S. 1 (1968)). The fact that the officer's suspicion was confirmed by evidence found during the unauthorized search cannot be used after the fact to bootstrap that suspicion into probable cause for an arrest. *See State v. Swanson*, 164 Wis. 2d 437, 450–51, 475 N.W.2d 148, 153–54 (1991).

■

Since the search of Ford's person exceeded the scope of a *Terry* frisk and was not supported by the existence of probable cause justifying his arrest prior to the search, the evidence obtained from his person should have been suppressed. Accordingly, we reverse Ford's conviction for possession of THC and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.