STATE of Wisconsin, Plaintiff-Appellant,

v.

Aaron E. APPLEWHITE, Defendant-Respondent.†

Court of Appeals

*No. 2007AP1734–CR. Submitted on briefs June 12, 2008.
—Decided August 20, 2008.*

2008 WI App 138

(Also reported in 758 N.W.2d 181.)

† Petition to review denied.

179

180

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael C. Sanders*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Pamela S. Moorshead* of *Law offices of Pamela S. Moorshead*, Glendale.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. SNYDER, J. The State appeals from an order granting Aaron E. Applewhite's motion to suppress evidence seized during a pat-down search. The circuit court held that the pat-down and removal of contraband were not justified and granted the motion to

suppress. We conclude the pat-down and confiscation of contraband were proper; therefore, we reverse the order of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. On March 4, 2007, four Sheboygan police department officers, Brian Bastil, Paul Olsen, Trisha Miller, and Kurt Zempel, were dispatched to a residence regarding a report of a possible burglary in progress. Upon arrival at the scene, Miller observed Applewhite getting into a taxi cab. She asked Applewhite to exit the cab and asked him about his presence on the property. While Miller and Zempel were investigating and checking on Applewhite's contention that he had permission to be on the property, Olsen questioned Applewhite. Bastil, meanwhile, observed Applewhite's behavior "for officer safety." According to Bastil, Applewhite "kept putting his hands in his pants," which led Bastil to repeatedly inquire whether or not Applewhite had any weapons. Applewhite eventually responded that he did in fact have weapons on his person, and voluntarily produced two knives from his pocket, a retractable box-cutter and a switchblade knife.

¶ 3. After Applewhite produced the two weapons, Bastil performed a pat-down search. Bastil thought "that [Applewhite] possibly maybe had another weapon." According to Bastil, Applewhite "tensed up" during the pat-down. Bastil "immediately recognized packaging which is often used in narcotics." He seized thirteen individually wrapped baggies of marijuana from Applewhite's pockets, and then placed him under arrest

¶ 4. Applewhite was charged with possession with intent to deliver THC, possession of drug paraphernalia, maintaining a drug trafficking place, posses-

183

sion with intent to deliver or distribute on or near a school, and possession with intent to deliver methamphetamine.[1] The circuit court granted Applewhite's motion to suppress all evidence obtained during Bastil's pat-down search, holding that the State did not meet its burden of establishing a proper search and seizure. The State appeals.

## DISCUSSION

¶ 5. The State argues that Bastil's pat-down search of Applewhite was based on a reasonable suspicion that weapons were present, and that the contraband detected by the search was a permissible "plain feel" exception to the warrant requirement. "Whether evidence should be suppressed is a question of constitutional fact." *State v. Johnson*, 2007 WI 32, ¶ 13, 299 Wis. 2d 675, 729 N.W.2d 182 (citation omitted). The circuit court's findings of historical fact are to be upheld unless found to be clearly erroneous, and we will review the application of constitutional principles to the facts de novo. *Id.*

¶ 6. Officers are authorized to conduct a search of the outer clothing of a person during an investigative stop, "to determine whether the person is armed if the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.*, ¶ 21 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "[W]hether an officer had reasonable suspicion to effec-

---

[1] The possession of methamphetamine charge was later dropped by the State, because lab reports indicated that the substance in question was not methamphetamine.

tuate a protective search for weapons in a particular case" is decided on a "case-by-case basis, evaluating the totality of the circumstances." *Johnson*, 299 Wis. 2d 675, ¶ 22 (citation omitted). A frisk for weapons must be based on "reasonable suspicion—less than probable cause, but more than a hunch—that someone is armed." *State v. Buchanan*, 178 Wis. 2d 441, 448, 504 N.W.2d 400 (Ct. App. 1993).

■

¶ 7. The State asserts that, under the circumstances, Bastil had a reasonable suspicion that Applewhite may have had additional weapons. Wisconsin case law has consistently emphasized that the totality of all circumstances present and known to the officer must be taken into account to assess the legality of the procedure. *State v. Sumner*, 2008 WI 94, ¶ 23, 312 Wis. 2d 292, 752 N.W.2d 783. Of course, some factors will be of greater import than others in the reasonable suspicion calculus in a particular case. *Id.* We begin by identifying each primary factor present and then conclude by viewing these primary factors in the totality of circumstances. *See State v. Kyles*, 2004 WI 15, ¶¶ 17–18, 269 Wis. 2d 1, 675 N.W.2d 449. Here, we ascertain three primary factors demonstrating reasonable suspicion for the pat-down search: the type of crime under investigation, Applewhite's possession of and initial reluctance to produce the two knives, and Applewhite's repeatedly reaching into his pants pockets. We take each factor in turn.

¶ 8. First, we note that the officers were responding to a possible burglary in progress. Burglary is a type of crime that commonly involves a weapon. *See United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2007) (frisk of burglary suspect was objectively reasonable because burglary is a crime "normally and reasonably expected

185

to involve a weapon"). An officer is properly on heightened alert for weapons when investigating a suspected burglary.

¶ 9. Second, Bastil testified that when Applewhite produced two knives, Bastil was "sure that [Applewhite] possibly maybe had another weapon." Although not particularly well-articulated here, Bastil knew that Applewhite had been carrying two knives and it was reasonable for him to suspect that there may be more knives or other weapons. Furthermore, Applewhite's voluntary surrender of two weapons was not the cooperative act it might appear. Bastil had to ask "numerous times" whether Applewhite was carrying a weapon before Applewhite produced the knives. Applewhite's delay demonstrated a reluctance to part with his weapons. Where, as here, the subject possessed weapons and was hesitant to reveal those weapons, it is reasonable for an officer to believe that not all of the weapons have been produced.

¶ 10. Third, Bastil testified that he observed Applewhite putting his hands in his pants pockets and then taking them out. "Officers have a legitimate, objective concern for their own safety when an individual reaches into his pockets." *Kyles*, 269 Wis. 2d 1, ¶ 41. In *Kyles*, the defendant "at least twice inserted his hands into the pockets of his coat . . . [and] put his hands in his pockets at least once again after the officer requested that the defendant remove his hands from his pockets." *Id.*, ¶ 40. Although the supreme court refused to adopt a per se rule that hands in pockets will always justify a weapons frisk, the court did accept such behavior as an "important factor" in the overall analysis of dangerousness. *Id.*, ¶ 50. Here, Applewhite's putting his hands in his pockets weighs in favor of Bastil's decision to perform a pat-down search for weapons.

██

¶ 11. In its order to suppress, the circuit court said that the officers had no "reason to believe that the defendant continued to be armed and presently dangerous," and therefore did not "show reason for a pat-down search." As is evident from the foregoing analysis, we disagree. The totality of the circumstances, including the three factors above and all other circumstances known to Bastil at the time of the pat-down search, indicate that Bastil had a reasonable suspicion that Applewhite remained armed even after the two knives were voluntarily produced.

██ ██

¶ 12. The next question before us is whether Bastil's discovery of contraband in Applewhite's pockets is supported by the "plain touch" doctrine. When the pat-down itself is based on reasonable suspicion, the "plain feel" or "plain touch" exception to the warrant requirement may apply, and "when an officer touches or feels an object during a pat[-]down which his or her training and experience lead the officer to believe may be contraband, the officer is justified in retrieving the item." *State v. Ford*, 211 Wis. 2d 741, 746, 565 N.W.2d 286 (Ct. App. 1997) (citing *State v. Guy*, 172 Wis. 2d 86, 100–02, 492 N.W.2d 311 (1992)).

¶ 13. The State argues that the circuit court erred in holding that the "plain touch" exception to the warrant requirement did not apply to this pat-down.[2] According to the circuit court, "[a]ll that was immediately apparent to the officer was that there was something in the pocket wrapped in plastic and that there

---

[2] The court uses the terms "plain touch" and "plain feel" interchangeably. *See State v. Ford*, 211 Wis. 2d 741, 746, 565 N.W.2d 286 (Ct. App. 1997).

were lumps within this plastic" Further, the court believed Bastil "was not able to discern the contraband nature of the substance by his touching of the defendant's pockets on the outside of his clothing." We disagree.

¶ 14. The "plain touch" exception to the warrant requirement is an extension of the "plain view" doctrine. *Buchanan*, 178 Wis. 2d at 449. To pass constitutional muster, three factors must be present:

> (1) the evidence must be in plain view; (2) the officer must have a prior justification for being in the position from which [he or] she discovers the evidence in "plain view"; and (3) the evidence seized "in itself or in itself with facts known to the officer at the time of the seizure, [must provide] probable cause to believe there is a connection between the evidence and criminal activity."

*Id.* (citation omitted). In *Buchanan*, the defendant was frisked for weapons because the officers had a tip that he and others were armed. *Id.* at 448. During the pat-down search, the officer felt what he believed to be "a plastic baggie containing rice" in the defendant's waistband. *Id.* at 444. Based upon the officer's training and experience in drug-related crimes, he "immediately realized that this large bag of rice had cocaine in it." *Id.* The officer confiscated the baggie, which held nineteen packets of what was later learned to be cocaine. *Id.* The supreme court held that the first two factors of the "plain touch" exception had been met. *Id.* at 450. The officer felt a bulge in Buchanan's waistband and therefore the evidence was in "plain view." *Id.* Further, because the frisk had been based on reasonable suspicion, the officer "had a lawful right of access" to the object in the waistband. *Id.*

¶ 15. The *Buchanan* analysis transfers easily to the facts before us. Bastil testified that he felt the plastic baggies in Applewhite's pocket during the pat-down search; therefore, the evidence was in "plain view." *See id.* Furthermore, Bastil discovered the evidence during a lawful pat-down search for weapons. Thus, Bastil had "prior justification" for being in the position to discover the plastic baggies. *See id.* at 449–50. The only issue subject to debate is whether Bastil recognized the incriminating character of his discovery.[3]

¶ 16. The "plain touch" exception does not demand that the officer be absolutely certain of what specific contraband is present, only that the object is incriminating in nature. *See Texas v. Brown*, 460 U.S. 730, 741 (1983). During the motion hearing, the prosecutor and Bastil engaged in the following exchange:

Q: And were you able to feel the content in the front pants pocket through those jeans?

A: Yes, I could feel it. It seemed as individually wrapped baggies in his pocket.

Q: Could you hear anything when you patted him down?

A: Kind of a crumble. Sounds like plastic sounds I guess.

---

[3] This is sometimes referred to as the "immediately apparent" requirement. If an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity "immediately apparent," there has been no invasion of the suspect's privacy beyond that already authorized by the officer's lawful search for weapons. *See Horton v. California*, 496 U.S. 128, 136 (1990).

Q: From your training and experience[,] officer, were you immediately familiar with the size and what those items felt like?

A: Yes.

Q: What did they feel like from your training and experience?

A: Felt through my training and experience as packages [of] narcotics.

Q: Could you approximate the size of the individual packages that you felt?

A: Felt like a nickel bag or five dollar bag of weed, it felt like.

¶ 17. The prosecutor later asked Bastil, "Once you felt what you described as the plastic or plastic baggies and the individual items from your training and experience officer, were you convinced as to what you would find?" Bastil answered, "Yes, Sir."

¶ 18. Applewhite attempts to distinguish this situation from cases like *Buchanan*, where a pat-down search was ruled permissible because the officers were responding to a possible drug house. He argues that "[n]othing about the context of this search lent any credence to the officer's speculation about what the plastic might contain." However, advance knowledge of the possibility of a particular offense is not required. *See Brown*, 460 U.S. at 742–44 (officer must have a "practical, nontechnical" probability that incriminating evidence is involved). While a pat-down search for weapons "is not a general evidentiary search, an officer is not required to look the other way when he inadvertently discovers evidence of a crime during the course of a legitimate protective frisk." *State v. McGill*, 2000 WI 38, ¶ 40, 234 Wis. 2d 560, 609 N.W.2d 795.

¶ 19. Bastil testified that he had been with the Sheboygan Police Department for two years and had previously worked as a police officer in Atlanta. He explained that he had worked as a street level narcotics and beat officer and had trained in the handling of controlled substances and their packaging at the City of Atlanta Police Academy. We are satisfied that Bastil had the knowledge and experience to immediately recognize that the objects in Applewhite's pocket were likely packaged narcotics.

¶ 20. The State has demonstrated all three factors needed to support a constitutional "plain touch" seizure of the narcotics discovered during the lawful pat-down search.

## CONCLUSION

¶ 21. We conclude that the pat-down search performed by Bastil was based on a reasonable suspicion that Applewhite had additional weapons and posed a danger to the officers. We further hold that the "plain touch" exception to the Fourth Amendment protection against unreasonable search and seizure applies here and, consequently, the evidence discovered during the pat-down search was not subject to suppression. Accordingly, we reverse the order of the circuit court.

*By the Court.*—Order reversed.