**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 29, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1754**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021CT27**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JEFFREY D. KOSMOSKY,

   DEFENDANT-APPELLANT.

            APPEAL from a judgment of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge. *Affirmed*.

     ¶1     LAZAR, J.[1]  Jeffrey D. Kosmosky appeals from a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration,

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

third offense, contrary to WIS. STAT. § 346.63(1)(b). He contends that the police officer who arrested him after an admittedly lawful traffic stop lacked sufficient grounds upon which to expand the scope of his initial detention, thereby violating his Fourth Amendment rights. This court disagrees and affirms.

¶2      Calumet County Deputy Sheriff Parker Fuller stopped Kosmosky for driving forty-three miles per hour in a twenty-five-mile-per-hour zone. When Fuller approached Kosmosky, he noticed that Kosmosky had lit a cigarette, which suggested to Fuller (based on his previous law enforcement experience) that Kosmosky may have been trying to mask another odor. Fuller also noticed that Kosmosky had slow speech, difficulty locating his insurance information, and watery, bloodshot eyes. Fuller asked Kosmosky how much he had had to drink, and Kosmosky said two beers. Fuller then asked Kosmosky to exit the vehicle and conducted standardized field sobriety tests (SFSTs) which, based on Fuller's training and experience, indicated that Kosmosky was impaired.

¶3      The State charged Kosmosky with third offenses of operating a vehicle while under the influence of an intoxicant and operating a vehicle with a prohibited blood alcohol concentration. In a pretrial motion to suppress evidence, Kosmosky argued that the scope of his detention was impermissibly enlarged when he was asked to exit his vehicle to perform SFSTs. At a hearing on Kosmosky's motion, Fuller testified to all of the undisputed facts outlined above. The circuit court also had the benefit of video from Fuller's in-car camera, which had recorded the entire traffic stop.

¶4      The circuit court denied Kosmosky's motion to suppress, finding that Kosmosky's smoking (in a "day and age" when smoking is widely prohibited and is considered "disrespectful … in the close presence of a total stranger"), slow

2

speech, difficulty locating insurance information, watery, bloodshot eyes, and admission to consuming alcohol provided reasonable suspicion to enlarge the scope of the traffic stop.[2] After the court's ruling on his motion to suppress, Kosmosky elected to plead no contest to the charge of operating a vehicle with a prohibited alcohol concentration, third offense, against him. The other count was dismissed and read in.

¶5 Kosmosky appeals on Fourth Amendment grounds. He does not challenge the legality of the initial traffic stop for speeding, but he argues that Fuller lacked a sufficient basis for extending the stop and expanding its scope to include an investigation for impaired driving. His appeal presents an issue of constitutional fact, which requires this court to give "deference to the circuit court's findings of evidentiary fact, and … review[] independently the circuit court's application of those facts to constitutional standards." *See State v. Malone*, 2004 WI 108, ¶14, 274 Wis. 2d 540, 683 N.W.2d 1.

¶6 People are protected against unreasonable searches and seizures under the auspices of both the Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution. "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses,

---

[2] Relying on *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), and *State v. Brown*, 2020 WI 63, 392 Wis. 2d 454, 945 N.W.2d 584, the circuit court disposed of Kosmosky's argument that he should not have been removed from his vehicle, stating that those cases stand for "the proposition that asking a lawfully-stopped driver to get out of the vehicle regardless of the circumstances is reasonable and permissible." This is relevant only with respect to whether reasonable suspicion to extend the stop existed before Fuller had Kosmosky exit his truck; when Kosmosky got out of the truck, Fuller observed additional indicia of intoxication, including an odor of alcohol and a "peculiar posture" that was observable on video. Because this court concludes that there were sufficient facts to support reasonable suspicion of impaired driving *before* Kosmosky exited the vehicle, it need not address whether the officer was justified in having Kosmosky exit the vehicle on other grounds.

3

papers, and effects, against unreasonable searches and seizures.'" ***Davis v. United States***, 564 U.S. 229, 236 (2011) (quoting U.S. Const. amend. IV). The key phrase is that the people are protected against "unreasonable" searches and seizures. *See* ***State v. Parisi***, 2016 WI 10, ¶28, 367 Wis. 2d 1, 875 N.W.2d 619. There is no dispute that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." ***Whren v. United States***, 517 U.S. 806, 809-10 (1996); ***State v. Popke***, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569.

¶7      In evaluating whether reasonable suspicion sufficient to extend the seizure exists in a traffic-stop scenario, the court must "look to the totality of the circumstances to determine whether the 'arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe … that the defendant was operating a motor vehicle while under the influence of an intoxicant.'" ***State v. Babbitt***, 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994) (alteration in original) (quoting ***State v. Nordness***, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986)). This "is a common sense test:  under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." ***State v. Colstad***, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394 (citation omitted); ***State v. Waldner***, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996).

¶8      This court has explained that:

> If, during a valid traffic stop, the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's

intervention in the first place, the stop may be extended and a new investigation begun.

*State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999). When there are multiple potentially suspicious facts, they can accumulate and build to a finding of reasonable suspicion; "[a]ny one of these facts, standing alone, might well be insufficient. But that is not the test we apply. We look to the totality of the facts taken together. The building blocks of fact accumulate. And as they accumulate, reasonable inferences about the cumulative effect can be drawn." *Waldner*, 206 Wis. 2d at 58.

¶9      Here, the undisputed facts Fuller observed that suggested to him Kosmosky might be driving under the influence of an intoxicant included smoking during the traffic stop, slow speech, difficulty in locating insurance information, bloodshot, glassy eyes, and the admission of having consumed "two beers." Also, "it is the circumstances that govern, not the officer's subjective belief." *State v. Buchanan*, 178 Wis. 2d 441, 447 n.2, 504 N.W.2d 400 (Ct. App. 1993). So, though it was not mentioned by Fuller as a reason for extending the stop, Kosmosky's excessive speed was another valid "building block" of reasonable suspicion. *See State v. Adell*, 2021 WI App 72, ¶25, 399 Wis. 2d 399, 966 N.W.2d 115 ("[T]he deputy here could reasonably have considered the excessive speeding as a variety of risky driving that may reflect operating with a prohibited alcohol concentration.").

¶10     Kosmosky acknowledges that reasonable suspicion is to be evaluated based on the totality of the circumstances and that Supreme Court precedent precludes a "divide-and-conquer analysis." *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citation omitted). But that is exactly what Kosmosky

does, attempting to explain away each of the articulable facts supporting an inference of intoxicated driving by providing a potentially innocent reason for it.

¶11     First, with regard to his admission to having consumed "two beers," Kosmosky argues that it is not per se illegal in Wisconsin to drive after consuming an intoxicant, so it is not "constitutionally reasonable to conclude that the *inference* of wrongdoing from [an admission such as his] should *always* follow." Of course that is true. But in view of the other articulable reasons that a reasonable officer might suspect impaired driving in this case, it would be absurd to say that Kosmosky's admission counts for nothing. *See, e.g.*, ***County of Jefferson v. Renz***, 231 Wis. 2d 293, 316-17, 603 N.W.2d 541 (1999) (noting that admission of drinking supports probable cause to administer a preliminary breath test). While "sometimes a cigar is just a cigar," and two beers might not be enough to impair every driver, police officers are entitled to—if not required to—consider other factors in assessing whether Kosmosky's admission was an accurate reflection of his consumption and whether consuming two beers had left Kosmosky impaired and behind the wheel of a motor vehicle.

¶12     Similarly, Kosmosky argues that smoking is a legal activity undertaken by 16.4% of Wisconsinites, especially when they are "out and about with friends, family, co-workers, whomever, 'relaxing' and having a beer."[3]

---

[3] This court is not persuaded that Kosmosky's smoking during the traffic stop should be disregarded like a "covariant" in the context of statistical analysis because he had already admitted to drinking and had no reason to cover up the smell of alcohol. That statement has no tethering or underlying logical basis. It is equally likely that a strong odor of intoxicants could undermine Kosmosky's assertion that he had consumed only two drinks. *See State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 ("[O]fficers are not required to rule out the possibility of innocent behavior before initiating a [*Terry*] stop.") (alterations in original) (quoting *State v. Genous*, 2021 WI 50, ¶8, 397 Wis. 2d 293, 961 N.W.2d 41).

Setting aside the fact that Kosmosky was alone and being questioned by a police officer about going almost twenty miles over the speed limit rather than relaxing with family at the time of the cigarette[4] in question, he again ignores the "well-settled law" that "police officers are not required to rule out the possibility of innocent behavior before initiating [or extending] a brief stop." *See Waldner*, 206 Wis. 2d at 59. We are to consider factors in the aggregate, and smoking during a traffic stop is another valid building block that can contribute to reasonable suspicion. *See, e.g.*, *United States v. Moore*, 329 F.3d 399, 401 n.1 (5th Cir. 2003) (noting testimony that, in police officer's experience, suspects sometimes use smoking to mask the smell of alcohol on their breath).

¶13    Next, Kosmosky attacks the validity of Fuller's testimony that he had "watery and bloodshot" eyes as a valid factor contributing to reasonable suspicion, citing a study that "*eliminated* the consideration of bloodshot eyes as an indicator of impairment given its subjective nature." As our supreme court has pointed out in "reaffirm[ing] that a law enforcement officer may consider bloodshot and glassy eyes to be one of several indicators of intoxication," that "study does not conclude that intoxication does not cause eyes to become bloodshot and glassy." *State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120. Thus, Kosmosky's eyes were yet another valid factor—yet another building block—supporting reasonable suspicion of impaired driving.

¶14    Finally, Kosmosky argues that difficulty in finding his insurance card is not "proof of impairment." He does not address Fuller's testimony that,

---

[4] This court further declines to go down the rabbit hole of implausibility by having to explain that concerns over cigarette smoking are not the equivalent of inappropriate racial/terrorist profiling.

upon making contact with him, Fuller noticed that Kosmosky exhibited "slow speech," which suggested possible impairment. Obviously, "proof of impairment" is not required; reasonable suspicion requires less certainty than probable cause. *State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. These are additional factors that, viewed in conjunction with the other factors already mentioned, would lead a reasonable officer to suspect impaired driving.

¶15 In summary, the undisputed objective, articulable facts that suggested impaired driving to Fuller in this case are sufficient to meet the "low bar" of reasonable suspicion. *See State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted). Fuller did not even rely, as he could have, on the additional factor of Kosmosky's excessive speed. This is not a particularly close case; Kosmosky's argument notwithstanding, it bears little resemblance to the *Betow* case in which extension of the defendant's stop to search his vehicle for drugs was based solely on the fact that he had a mushroom sewn on his wallet and "appeared nervous." *See Betow*, 226 Wis. 2d at 92. Kosmosky's highlighting of certain facts present in his case that do not contribute to reasonable suspicion of impaired driving—his ability to park his car on the side of the road and to proactively produce his driver's license, for example—does not negate reasonable suspicion under the totality of the circumstances. *See State v. Lange*, 2009 WI 49, ¶23, 317 Wis. 2d 383, 766 N.W.2d 551. Accordingly, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

8