STATE of Wisconsin,
Plaintiff-Respondent,

v.

Martin D. TRIPLETT,
Defendant-Appellant.†

Court of Appeals

*No. 2004AP2032–CR. Submitted on briefs September 14, 2005.
—Decided November 9, 2005.*

## 2005 WI App 255

(Also reported in 707 N.W.2d 881.)

† Petition to review denied 1-20-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Syovata K. Edari*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Mark A. Neuser*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J.   Martin D. Triplett appeals his judgment of conviction for possession with intent to deliver cocaine and an order denying his motion for postconviction relief. Officers discovered the cocaine during a *Terry*[1] frisk for weapons. It fell down Triplett's pants leg when one of the officers gripped his belt loops and shook the waistband of his pants. Triplett contends that shaking his waistband went beyond the scope of a

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

permissible *Terry* search and that his trial counsel provided ineffective assistance for not moving to suppress the fruits of the search. We disagree. The officer's manipulation of Triplett's waistband was a minimally intrusive exploration of Triplett's outer clothing designed to discover whether Triplett had a weapon.

¶ 2. On March 18, 2002, a group of police officers and detectives reported to a Milwaukee residence to investigate complaints about drug dealing. Triplett walked into the kitchen through the rear door during the investigation. An officer made contact with him, inquiring why he was there. Triplett responded that he came to have his truck fixed. Another officer joined them while the other two officers stayed in the living room with several other people. The officer noticed that Triplett's hands shook and perspiration appeared on his forehead. He appeared very nervous and asked to use the bathroom.

¶ 3. The officer wished to question Triplett about his knowledge of any drug sales in the residence. He suspected that Triplett might have come to buy drugs and attributed Triplett's apparent discomfort to an unwillingness to discuss such matters in front of the residents in the other room. He attempted to put Triplett more at ease by asking him to step into a bedroom out of the others' sight.

¶ 4. Triplett complied, and the officer noted that he became even more agitated, renewing several times his request to use the bathroom. The officer told him that he could use the bathroom but would have to be patted down first. Because of his conduct, the officer wanted to ensure that Triplett would not come out of the bathroom with a weapon. The defendant said, "okay," and complied.

¶ 5.   The officer proceeded with the patdown. When he got to Triplett's waist area, he found it difficult to "get a good feel for that area" because of Triplett's large frame and the amount of clothing he was wearing. Triplett had a winter coat on that hung slightly below the waist, and his stomach hung slightly over the waistband. He was 5'11" and roughly 245 pounds. The officer thought he could get a better patdown if he first loosened any weapons that might be hidden in the waistband, so he tugged on Triplett's belt loops and gave the waistband a few shakes. As he shook, a clear plastic bag dropped from the bottom of Triplett's right pants leg. This bag contained several smaller corner-cut bags with an off-white chunky substance, which the officer believed from his experience and training to be cocaine base.

¶ 6.   The officer informed Triplett he was under arrest. At that point, he terminated the patdown and proceeded with a custodial search. He recovered $1126 in cash, a cell phone, and a pager.

¶ 7.   The State charged Triplett with violating Wis. Stat. § 961.41(1m)(cm)2 (2001–02),[2] possession with intent to deliver cocaine base, a charge to which he pled guilty. Triplett subsequently moved for postconviction relief to withdraw his plea, claiming that trial counsel was ineffective because he never moved to suppress the evidence. He presented a quite different account of the facts at the postconviction hearing. According to Triplett, the police conducted two searches: first they patted him down in the kitchen and then conducted a subsequent strip search in the bedroom. He claimed he informed trial counsel of this search, but trial counsel testified Triplett had said nothing about a strip search

---

[2] All future references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

and he first heard that account of events when he read the presentence investigation report. Counsel maintained that when he asked Triplett about the new account, Triplett explained that he had been "nervous when he talked to the PSI writer."

¶ 8. The circuit court denied Triplett's motion. The court found both the officer who conducted the search and trial counsel to be credible witnesses. By contrast, it found Triplett's strip search version "incredible." It also concluded that the manner in which the officer shook Triplett's pants fell within the scope of a permissible *Terry* frisk. For these reasons, the court determined that trial counsel did not function ineffectively. Triplett appeals.

¶ 9. We address first Triplett's renewed contention that a strip search occurred and accept the findings of the circuit court. That court, not this court, had the opportunity to observe the witnesses and their demeanor in the courtroom. *See* Wis. Stat. § 805.17(2) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *Chapman v. State*, 69 Wis. 2d 581, 583–84, 230 N.W.2d 824 (1975). We see nothing unreasonable about its choice to credit the testimony of defense counsel and the arresting officer and to disbelieve Triplett. *See id.*

¶ 10. Next we consider whether the manner in which the arresting officer conducted his frisk for weapons exceeded the scope permitted by *Terry*.[3] Both parties cite a wealth of authority in support of their respective positions, a fact that is not surprising in light of *Terry*'s

---

[3] Triplett does not contend that the officers lacked the reasonable suspicion to conduct a *Terry* frisk. *See Terry*, 392 U.S. at 27 (officer may frisk an individual if he or she reasonably believes the person may have a weapon).

refusal to adopt any bright-line rule for what constitutes a reasonable search for weapons. Rather, *Terry* recognizes that the proper scope of such a search depends on the unique circumstances in each individual case: "We need not develop at length in this case, however, the limitations which the Fourth Amendment places upon a protective seizure and search for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases." *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

¶ 11. Despite the fact-specific nature of our analysis, we glean from the case law several useful guiding principles. First, an officer should confine his or her search "strictly to what [is] minimally necessary" to learn whether an individual is armed. *Id.* at 30. Our supreme court has stated that a proper investigative patdown "involves only a search that is carefully limited to a pat-down of the outer clothing of a suspect," *State v. Richardson*, 156 Wis. 2d 128, 146–47, 456 N.W.2d 830 (1990). It has defined "patdown" to mean a search characterized by "careful exploration of the outer surfaces of a person's clothing." *See State v. Washington*, 134 Wis. 2d 108, 122; 396 N.W.2d 156 (1986) (citation omitted), *abrogated on other grounds by State v. Swanson*, 164 Wis. 2d 437, 475 N.W.2d 148 (1991), *abrogated on other grounds by State v. Sykes*, 2005 WI 48, 279 Wis. 2d 742, 695 N.W.2d 277. *But see, e.g., United States v. Hill*, 545 F.2d 1191, 1192–93 (9th Cir. 1976) (upholding search in which officer seeking information from an individual near the scene of a bank robbery lifted the individual's shirt when he detected a bulge; commenting that "*[a]ny limited intrusion* designed to discover guns, knives, clubs or other instruments of assault [is] permissible" (emphasis added.)).

¶ 12. Our supreme court has not, however, addressed the scope of a permissible *Terry* search where an effective patdown is impossible. The prevailing rule seems to be that an officer is entitled not just to a patdown but to an *effective* patdown in which he or she can reasonably ascertain whether the subject of the patdown has a weapon; where an effective patdown is not possible, the officer may take other action reasonably necessary to discover a weapon. *See, e.g., State v. Vasquez*, 807 P.2d 520, 524 (Ariz. 1991) (where officer's patdown could not reveal whether a jacket contained weapons because of its bulkiness, officer acted reasonably in reaching into the pocket); *State v. Hudson*, 874 P.2d 160, 163 (Wash. 1994) (recognizing that in "cases where the patdown is inconclusive . . . reaching into the clothing is the only reasonable course of action for the police officer to follow"); *Hodges v. State*, 678 So. 2d 1049, 1051 (Ala. 1996) (holding officer did not have to pat down outer part of a hard leather boot before lifting defendant's pants leg to determine whether boot had a weapon inside because a patdown probably would have revealed nothing and "would not have lessened the police officer's concerns for his own safety"); *State v. Evans*, 618 N.E.2d 162, 171 (Ohio 1993) (stating an officer may recover an item if its hardness, size, and density warrant his or her belief that it could be a weapon and the shape or nature of the item is not discernible through outer clothing, particularly where the clothing is bulky).

¶ 13. We find these cases persuasive. *Terry* teaches that "there is 'no ready test for determining reasonableness other than by balancing the need to search . . . against the invasion which the search . . . entails,' " *see Terry*, 392 U.S. at 21 (citation omitted), and informs that reasonableness depends on whether the officer's action

"was reasonably related in scope to the circumstances which justified the interference in the first place," *id.* at 20. By recognizing that an officer may go beyond the scope of a traditional patdown of the outer clothing when this type of investigatory search for weapons would be ineffective, we remain faithful to the *Terry* court's policy of assessing each case on the basis of its own facts and circumstances rather than adopting an overly rigid bright-line test.

¶ 14.  Applying these principals to the facts of this case, we hold that the officer limited his degree of interference with Triplett's person to what was reasonably necessary under the circumstances. The officer could not tell whether Triplett had any objects hidden in his waistband because of Triplett's bulky frame and heavy clothing. In other words, the officer could not get an effective patdown. In concluding that his alternative to the patdown was reasonable, we make two observations. First, the officer testified that he shook Triplett's waistband by his belt loops in order to loosen any possible weapons, so as to make the patdown effective. The fact that he acted with the intent to facilitate a traditional patdown supports that he only sought to discover any possible weapons. Second, we note that shaking a waistband by tugging on a belt loop confines the alternative method of looking for weapons to manipulating the outer clothing. Thus, although it may not qualify as a patdown, it is highly similar. Indeed, one might argue that it intruded *less* upon the sanctity of Triplett's person than a traditional patdown. *Terry* noted that in a traditional patdown, the officer must "feel with sensitive fingers every portion of the [person's] body." *Terry*, 392 U.S. at 17 & n.13 (citation omitted). The officer was not feeling Triplett's body with "sensitive fingers" when he tugged on Triplett's belt loops. Further,

the fact that the officer touched only Triplett's outer clothing makes this officer's actions less intrusive than the actions approved in the foreign state cases cited above.

¶ 15. Indeed, we find this case very factually similar to *State v. Greene*, 97 P.3d 472 (Idaho Ct. App. 2004), *review denied*, No. 28746, 2004 Ida. App. LEXIS 86 (Idaho Ct. App. Sept. 13, 2004). In *Greene*, the officer grabbed and shook the back of the waistband on the defendant's pants after the defendant shoved something in his pants while the officer attempted to pat him down. *Id.* at 473–74. The court upheld the denial of Greene's motion to suppress the bag of cocaine that fell out of Greene's pants, noting that the officer's response was the "least intrusive means available" to discover whether Greene had a weapon on him. *Id.* at 473, 476.

¶ 16. Triplett points out that in *Greene*, the defendant was evasive when the officer questioned him, appeared nervous and intoxicated, and had put his hands in his pockets several times. *See id.* at 473. According to Triplett, the facts here are distinguishable. Triplett was not intoxicated, did not make furtive movements as if to hide an object, and did not evade police questioning.

¶ 17. We disagree with Triplett's analysis. The officers in this case encountered Triplett in a suspected drug house, a place that one could expect to be dangerous by its very nature. Unlike Greene, who was in handcuffs at the time the officer pulled his waistband, *see id.* at 473, Triplett had free use of his hands and intended to enter a bathroom where the officers would not be able to see his movements. Even if a potential weapon in his waistband had been hard to reach at the time, Triplett could easily retrieve it after removing or rearranging his clothes in the bathroom. The officer who manipulated his waistband acted reasonably.

¶ 18. We distinguish the two cases Triplett relies upon to support a contrary conclusion. First, he cites *State v. Ford*, 211 Wis. 2d 741, 742, 744, 750, 565 N.W.2d 286 (Ct. App. 1997), in which we held that the officer violated *Terry* when he pulled out the waistband of Ford's boxer shorts and shined a flashlight into them. *Ford* was not limited to a simple manipulation of Ford's outer clothing. Rather, the officer *looked inside* his clothing at intimate parts of his body. Certainly, that circumstance fits the definition of "intrusive." We also distinguish *State v. Smith*, 693 A.2d 749, 754 (Md. 1997), in which the officer decided to "double check" his patdown of the subject by pulling the person's shirt back so he could see the waistband. The officer here was not "double checking" and attempting to "verify" what he had learned from a previous patdown. He had not learned anything from the previous patdown, and his attempt to loosen any weapons by tugging at the waistband was designed to make a patdown effective.

¶ 19. We hold that the manner in which the officer searched Triplett's waistband for weapons stayed within the bounds of *Terry*. The infringement on the sanctity of Triplett's person was a minimally invasive manipulation of his outer clothing designed to facilitate a patdown. The officer had a right to make his patdown effective, and shaking Triplett's waistband was a reasonable means of accomplishing this objective. We affirm.

*By the Court.*—Judgment and order affirmed.