COURT OF APPEALS
DECISION
DATED AND FILED

January 12, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP322-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF327

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SERGHEI KUNDILOVSKI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dunn County:  JAMES M. PETERSON, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Serghei Kundilovski appeals a judgment convicting him of three counts of homicide by intoxicated use of a vehicle while having a prior

intoxicant-related conviction or revocation, contrary to WIS. STAT. § 940.09(1)(a) and (1c)(b) (2017-18). He also appeals an order denying his postconviction motion to withdraw his guilty pleas.

¶2      Kundilovski argues his pleas were not knowing, intelligent, and voluntary based on a combination of three factors: (1) his "substantial comprehension issues" due to a traumatic brain injury (TBI); (2) his trial attorney's failure to use an interpreter when discussing the plea agreement with Kundilovski outside of court; and (3) his trial attorney's "misleading" advice that Kundilovski was likely to receive aggregate sentences totaling only three to seven years, despite the fact that the maximum sentences for the offenses to which Kundilovski pled totaled 120 years. In the alternative, Kundilovski argues he is entitled to plea withdrawal because his trial attorney was ineffective by failing to use an interpreter when meeting with Kundilovski outside of court, by failing to "retain an expert to establish … Kundilovski's language limitations," and by incorrectly advising Kundilovski regarding the likely length of his sentences. We reject these arguments and affirm.

## BACKGROUND

¶3      In July 2017, Kundilovski drove his car in the wrong direction on Interstate 94 in Dunn County. He collided nearly head-on with an oncoming vehicle, killing all three of its occupants. Kundilovski spent approximately one month in the hospital following the crash. His injuries included two brain hemorrhages, which constituted a TBI.

¶4      As a result of the accident, the State charged Kundilovski with nine counts, three related to each victim: three counts of first-degree reckless homicide; three counts of operating a motor vehicle while revoked, causing the death of

another; and three counts of homicide by intoxicated use of a vehicle while having a prior intoxicant-related conviction or revocation. Kundilovski was born in Moldova but has been in the United States since approximately 2010. He is fluent in Russian but has limited English proficiency. An interpreter was therefore used during all court proceedings at which Kundilovski was present. However, Kundilovski's trial attorney, Scott Schlough, did not use an interpreter when meeting with Kundilovski outside of court.

¶5 Approximately four and one-half months after the accident, Kundilovski entered guilty pleas to the three homicide by intoxicated use of a vehicle counts pursuant to a plea agreement. In exchange for Kundilovski's pleas, the State agreed to recommend that the remaining six charges and a traffic case be dismissed and read in for purposes of sentencing and restitution. The parties further agreed that a presentence investigation report (PSI) would be prepared and that both sides would be free to argue at sentencing.

¶6 As with all other court proceedings at which Kundilovski was present, an interpreter was used during the plea hearing. At the beginning of the hearing, Kundilovski confirmed that he understood the interpreter. The circuit court then conducted a plea colloquy, during which it confirmed that Kundilovski understood the elements of the crimes to which he was pleading guilty. The court also explained that the maximum penalty for each of the three charges was a forty-year sentence or a $100,000 fine, or both. Kundilovski responded that he understood the maximum penalties. The court further explained that the sentences could be imposed consecutively, and Kundilovski stated that he understood.

¶7 Kundilovski confirmed that he had enough time to speak to Schlough about his pleas and ask any questions that he wanted to ask. He also confirmed that

he had reviewed the plea questionnaire and waiver of rights form with Schlough and had signed that form. The form lists the maximum penalty for the offenses as "$100,000 or 40 years imprisonment or both x 3 = $300,000 or 120 years imprisonment or both (maximum term of confinement of 75 total years)." The form also states, "I understand that the judge is not bound by any plea agreement or recommendations and may impose the maximum penalty." By signing the form, Kundilovski confirmed that he had read it, understood its contents, had reviewed it with Schlough, and had answered its questions truthfully.

¶8     The circuit court inquired during the plea colloquy about Kundilovski's ability to understand English, and Kundilovski responded that his understanding was "very limited." He stated, however, that he had been employed as a truck driver in the United States and was therefore able to follow road signs. The court then acknowledged the interpreter's presence and inquired whether there was "anything so far that has been said that you do not understand." Kundilovski responded, "No, I understand everything."

¶9     The circuit court later stated:

> And do you understand that the Court is not bound by any recommendations? The only bounds the Court has are the maximum possible penalties that we spoke about. The Court can't go beyond that. But my understanding is that your agreement is both parties would be free to argue what the sentence may be. Do you understand that?

Kundilovski responded, "Yes." The court then accepted Kundilovski's pleas and found him guilty.

¶10     At Kundilovski's sentencing hearing, the State asked the circuit court to impose consecutive sentences totaling seventy-five years' initial confinement and fifteen years' extended supervision. Schlough did not make a specific sentence

recommendation, although he argued the court should not impose the maximum penalties. The court ultimately imposed consecutive sentences totaling seventy-five years' initial confinement and thirty years' extended supervision.

¶11     Kundilovski subsequently filed a postconviction motion to withdraw his guilty pleas. He argued his pleas were not knowing, intelligent, and voluntary based on his language comprehension issues, Schlough's failure to use an interpreter during their out-of-court discussions about the plea agreement, and Schlough's advice that Kundilovski would likely receive aggregate sentences of three to seven years if he pled guilty. Based on those factors, Kundilovski asserted he "understood and believed that by pleading guilty, he was guaranteed a 3-7 year sentence." Kundilovski also argued Schlough was ineffective "by not using an interpreter to ensure that … Kundilovski understood basic legal concepts and by failing to retain an expert to establish … Kundilovski's language limitations."

¶12     In support of his motion, Kundilovski attached a report authored by psychologist Brenda Leske regarding his "ability to understand language, both auditory-receptive language and written information." Leske had evaluated Kundilovski in June and July 2019, over one and one-half years after he entered his pleas.

¶13     The circuit court held a hearing on Kundilovski's postconviction motion. At the hearing, Leske explained that the main areas of language she assessed during her evaluation of Kundilovski were comprehension, naming, and recognition. She summarized her findings as follows:

> Mr. Kundilovski is struggling substantially with … regard to his language functioning. He has demonstrated substantial difficulty processing meaningful language; even language presented both in English and in Russian. The results indicate that his underlying reasoning capacity appears to be

intact but he—you know, [the interpreter] and I really tried to do our best to do what we could to support the process for him but he … did have … substantially weak vocabulary; substantially weak long-term memory; substantially weak comprehension.

His comprehension was like the first to the ninth percentile for the impaired borderline-impaired range. He had word-finding difficulties. His naming was at the fifth percentile. His, you know, language comprehension, processing, naming, and memory were all problematic. He was, however, able to repeat back very well, you know, at the sixty-fourth percentile. So it may look at times as though he's very well able to understand when in fact he's not because he—and he may himself think because he can repeat the words back to you that he understands but there's no understanding needed simply to pair back someone's words. So that's a concern.

¶14 Leske testified Kundilovski's language comprehension skills were "poor" in both English and Russian. She also testified that the brain hemorrhages Kundilovski had experienced as a result of the accident constituted a TBI, which could affect his memory and language comprehension. She opined that Kundilovski's TBI could have adversely affected his ability to understand his legal proceedings. She further opined that because of his TBI, Kundilovski would "need extra help to understand things" that a person without a TBI would not need.

¶15 Schlough testified at the postconviction hearing that he had discussed the plea agreement with Kundilovski outside of court on at least three occasions. No interpreter was used during those discussions, and Schlough testified he did not consider asking for an interpreter. He explained that he and Kundilovski used a speech-to-text translation program to communicate "a couple times," and "that seemed to work for the most part." In fact, Schlough testified he used that program to make a sentence-by-sentence translation of the plea questionnaire into Russian, and Kundilovski "actually made corrections as we were going through saying, this doesn't seem to say the same thing."

¶16    Schlough also testified that when he had concerns about whether Kundilovski understood a concept during their discussions of the plea agreement, he would attempt to explain that concept "in smaller words; less complicated terms" until it appeared that Kundilovski understood. He explained:

> Often we would go back and forth in that discussion. Here's a statement. He would say, I don't know. I would say some clarification of it. And then he would say, is that like this or—and we would keep working that way until I thought we had an understanding for the most part.

¶17    For instance, Schlough testified that he initially had concerns about whether Kundilovski understood the distinction between concurrent and consecutive sentences. Schlough therefore "broke it down to mean that it would be one sentence served and then you would start your next one … and he seemed to understand that concept that it was one after another." Schlough acknowledged, however, that he had told Kundilovski's postconviction attorney he was not "one hundred percent sure whether … Kundilovski understood what consecutive sentencing meant."

¶18    Schlough also testified that he was initially concerned about Kundilovski's understanding of the concept of judicial sentencing discretion. He testified that at first, Kundilovski appeared to believe that after the parties made their sentencing recommendations, the circuit court would be required to adopt one of those recommendations, rather than "craft[ing] whatever sentence the judge deemed appropriate." Schlough testified he discussed the concept of judicial sentencing discretion with Kundilovski "a couple of times," and he believed they had "cleared … up" Kundilovski's misunderstanding. He conceded, however, that he could not "say for sure [whether Kundilovski understood] because I'm not …

Kundilovski." He further conceded that he never considered hiring an expert to evaluate Kundilovski's language comprehension.

¶19 Schlough also testified that he told Kundilovski he would likely receive aggregate sentences totaling only three to seven years. Schlough explained that estimate was based on a conversation he had with an individual who wrote private PSIs and had previously prepared PSIs for the Department of Corrections (DOC). Although Schlough told Kundilovski he believed the court would likely impose aggregate sentences totaling three to seven years, he testified Kundilovski never indicated that he believed the court could not impose sentences exceeding that length.

¶20 Kundilovski also testified at the postconviction hearing. He stated he did not tell Schlough that he wanted an interpreter during their out-of-court discussions because he did not think an interpreter "could help [him] in any way." He testified that Schlough told him he would receive sentences totaling three, five, or seven years if he took the plea agreement, and that was one reason he took the deal. He asserted Schlough told him that without the plea agreement, "it would be forty" years. Kundilovski conceded, however, that Schlough also informed him that "the judge could pick whatever sentence he wanted to pick no matter what the plea deal was."

¶21 Kundilovski also conceded that the circuit court told him during the plea hearing that it was not bound by any sentence recommendations and could impose the maximum penalties. Kundilovski acknowledged telling the court that he understood those concepts. Nevertheless, Kundilovski testified he still believed the court could not impose sentences exceeding seven years "because the plea agreement was that." He also testified that he believed he had to answer "yes" to

all of the court's questions during the plea colloquy, but he did not elaborate as to the basis for that belief. Finally, Kundilovski testified that he would not have entered his pleas had he known the court could impose the maximum sentences, and he would have instead gone to trial.

¶22 The State presented the testimony of two law enforcement officers at the postconviction hearing. First, state trooper Kyle DeVries testified that he had interviewed Kundilovski at the hospital several days after the accident using a Russian interpreter. That interview was video recorded, and the recording was played for the court during the postconviction hearing. DeVries testified that Kundilovski was able to answer some of his questions during the interview in English, without waiting for them to be translated into Russian.

¶23 Second, sergeant Douglas Ormson of the Dunn County Sheriff's Office testified that Kundilovski communicated with him and with other jail staff in English without using an interpreter. Ormson also testified that on one occasion, Kundilovski asked whether Ormson "knew of anybody else that could play chess because he couldn't find anybody that he could play with decently, and then he made a joke he was going to have to play with staff." Kundilovski denied making that statement and testified he had first learned how to play chess while in jail.

¶24 The circuit court made several findings of fact at the close of the postconviction hearing. First, the court found the testimony of Schlough, DeVries, and Ormson to be credible. While the court acknowledged Leske's testimony regarding Kundilovski's language comprehension difficulties, it noted Leske "was not here at the time of the plea." The court stated, "[T]here's a transcript [of the plea hearing], so the record is what it is as it relates to the plea when the Court made

9

findings that … Kundilovski knowingly, voluntarily, and intelligently entered his plea."

¶25     The circuit court next stated that it found Kundilovski's testimony during the postconviction hearing "to be somewhat incredible," and the court believed that even though Kundilovski had a "limited understanding of English, he was able to understand quite a bit." The court observed that Kundilovski had been in the United States "for several years" and had "worked as a commercial truck driver." The court also observed that the video of DeVries' interview with Kundilovski showed Kundilovski "talking and understanding some basic stuff certainly that the trooper was talking with him about." The court further noted that the jail staff "were in a position to be able to observe" Kundilovski, and he "was able to function in the jail without an interpreter."

¶26     The circuit court also found that Schlough spoke to Kundilovski about the plea agreement on multiple occasions, and from Schlough's perspective, "it appeared that his client understood these concepts." In addition, the court discussed its own impression of Kundilovski's understanding of the concepts discussed during the plea hearing, stating:

> [W]hat I recall observing him, his responses were appropriate; he understood what he was being asked. And if he carried with him some belief that, you know, his attorney … told him, you know, I think it might be in this range, he clearly was told that the Court was not bound by a recommendation and he was told what the maximum possible penalties were. And, again, these concepts were explained to him by … Schlough on a number of occasions.

¶27     The circuit court therefore stated it was "not satisfied or convinced … that … Kundilovski did not understand or know what he was doing when he entered the plea." Accordingly, the court saw "no reason" to disturb its determination

during the plea hearing that Kundilovski's pleas were knowing, intelligent, and voluntary. The court reiterated: "[F]rom the Court's perspective it appeared that he understood; he said he understood; he gave … appropriate answers to the questions the Court had. It was, in the Court's opinion, not extremely complicated." The court therefore concluded Kundilovski had failed to demonstrate the existence of a manifest injustice requiring plea withdrawal.

¶28 Turning to Kundilovski's ineffective assistance claim, the circuit court concluded Schlough's representation was neither deficient nor prejudicial. The court noted that Schlough had "spent quite a bit of time with [Kundilovski] explaining things," including the maximum penalties, which the court had also explained during the plea hearing. The court also stated that Schlough was not ineffective merely because his estimate regarding the length of Kundilovski's sentences turned out to be incorrect. The court further stated the plea agreement was straightforward, in that both parties were free to argue at sentencing, and the State had not agreed to recommend any specific sentence. The court therefore denied Kundilovski's postconviction motion for plea withdrawal, and this appeal follows.

## DISCUSSION

### I. Knowing, intelligent, and voluntary pleas

¶29 When a defendant seeks to withdraw a guilty plea after sentencing, he or she must prove, by clear and convincing evidence, that a refusal to allow plea withdrawal would result in manifest injustice. *State v. Cajujuan Pegeese*, 2019 WI 60, ¶15, 387 Wis. 2d 119, 928 N.W.2d 590. "A manifest injustice occurs when there has been 'a serious flaw in the fundamental integrity of the plea.'" *State v. Cross*, 2010 WI 70, ¶42, 326 Wis. 2d 492, 786 N.W.2d 64 (citation omitted). A defendant

11

may establish a manifest injustice by proving that his or her plea was not entered knowingly, intelligently, and voluntarily. *Cajujuan Pegeese*, 387 Wis. 2d 119, ¶15.

¶30     Whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact that we review independently. *Id.*, ¶16. In making that determination, however, we accept the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. *Id.*

¶31     As noted above, in this case, Kundilovski argues his pleas were not knowing, intelligent, and voluntary due to a combination of three factors: (1) his language comprehension difficulties; (2) the lack of an interpreter during his out-of-court discussions with Schlough; and (3) Schlough's "misleading" advice that Kundilovski was likely to receive aggregate sentences totaling only three to seven years. Based on these factors, Kundilovski asserts he did not understand the maximum penalties he faced or the fact that the circuit court was not bound by the parties' sentence recommendations, and he instead believed the court would be limited to imposing sentences totaling only three to seven years.

¶32     The circuit court's findings of fact defeat Kundilovski's claim that his pleas were not knowing, intelligent, and voluntary. Notably, Kundilovski does not argue that any of the court's findings are clearly erroneous. In particular, he does not challenge any of the court's credibility findings. When the circuit court acts as the finder of fact, it is the ultimate arbiter of the witnesses' credibility and of the weight to be given to their testimony. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶33     The circuit court rejected Kundilovski's claim that his language comprehension difficulties prevented him from validly entering his pleas. Although Kundilovski testified he did not understand that the court could impose sentences

12

exceeding seven years, the court rejected his testimony as incredible. Based on its own observations of Kundilovski during the plea hearing, the court found that Kundilovski understood the information the court had provided during the plea hearing, which included the maximum possible penalties and an admonition that the court was not bound by the parties' sentencing recommendations. We will not disturb the court's finding regarding Kundilovski's credibility, as the court had the opportunity to observe Kundilovski's demeanor during both the plea and postconviction hearings. *See State v. Triplett*, 2005 WI App 255, ¶9, 288 Wis. 2d 515, 707 N.W.2d 881.

¶34 The circuit court acknowledged Leske's testimony regarding Kundilovski's poor language comprehension. The court gave that testimony little weight, however, because Leske was not present during the plea hearing. The court instead relied on its own observations of Kundilovski's conduct during that hearing. A fact finder is not required to accept an expert witness's opinion, even if it is uncontradicted. *See State v. Fleming*, 181 Wis. 2d 546, 561, 510 N.W.2d 837 (Ct. App. 1993). Further, Leske testified that Kundilovski's impairments meant that he needed extra help to understand things. However, the court found credible Schlough's testimony that he took extra time to explain the plea agreement and questionnaire to Kundilovski.

¶35 Other evidence in the record further supports the circuit court's finding that Kundilovski's language comprehension was not so limited as to prevent him from knowingly, intelligently, and voluntarily entering his pleas. *See State v. Young*, 2009 WI App 22, ¶17, 316 Wis. 2d 114, 762 N.W.2d 736 (2008) (stating we search the record for evidence that supports the circuit court's factual findings). The court found Ormson's testimony credible. Ormson testified that Kundilovski made a comment while in jail about not being able to find a decent chess opponent.

That testimony suggests Kundilovski's mental faculties were not significantly impaired after the accident. In addition, Kundilovski himself testified that he learned to play chess while in jail, which further suggests that his mental functioning was sufficient to allow him to knowingly, intelligently, and voluntarily enter his guilty pleas.

¶36 The circuit court also rejected the evidence Kundilovski presented to support his claim that his pleas were not knowing, intelligent, and voluntary due to the lack of an interpreter during his out-of-court meetings with Schlough. Instead, the court expressly found Schlough's testimony credible. Schlough testified that although Kundilovski initially struggled to understand certain legal concepts, Schlough was ultimately able to explain those concepts in a way that Kundilovski could understand by breaking them down into simpler terms and by using translation software when necessary. Schlough's testimony supports the court's finding that Kundilovski was able to understand the information Schlough presented during their out-of-court discussions, even without an interpreter.

¶37 Other evidence further supports the court's finding in that regard. The court credited DeVries' testimony that during his postaccident interview with Kundilovski in the hospital, Kundilovski was able to answer some of his questions without waiting for the interpreter to translate them into Russian. The court also relied on the video recording of that interview. In addition, the court credited Ormson's testimony that Kundilovski was able to communicate with jail staff without an interpreter.

¶38 Furthermore, Kundilovski's own testimony did not support his claim that he needed an interpreter during his out-of-court discussions with Schlough. Kundilovski conceded that Schlough told him "the judge could pick whatever

sentence he wanted to pick no matter what the plea deal was." In addition, Kundilovski did not testify that he could not understand Schlough's advice, nor did he testify that was unaware of the maximum penalties. Kundilovski's testimony therefore supports the court's finding that Schlough was able to communicate adequately with Kundilovski, even without an interpreter.

¶39 Finally, the circuit court rejected Kundilovski's claim that Schlough's "misleading" advice regarding the likely length of Kundilovski's sentences rendered his pleas invalid. The court found that Schlough had explained the maximum penalties to Kundilovski, as well as the fact that the court was not bound by the parties' recommendations, and that Kundilovski understood that information. The court further found, based on Schlough's testimony, that Schlough merely provided Kundilovski with an estimate of the likely length of his sentences. Thus, the court implicitly found that Schlough never promised or guaranteed that Kundilovski would receive aggregate sentences totaling only three to seven years if he pled guilty. While Kundilovski testified he believed the court was limited to imposing sentences of three to seven years, the court did not find his testimony credible.

¶40 Again, Kundilovski does not argue that any of the circuit court's factual findings are clearly erroneous. The court's findings establish that Kundilovski was told—and understood—that the court could impose the maximum penalties and was not limited by any sentence recommendations. On this record, the court properly rejected Kundilovski's claim that his pleas were not knowing, intelligent, and voluntary because he erroneously believed that the court was limited to imposing sentences totaling three to seven years.

## II. Ineffective assistance of counsel

¶41 In the alternative, Kundilovski argues he is entitled to plea withdrawal because Schlough was constitutionally ineffective. A defendant may demonstrate the manifest injustice necessary for plea withdrawal after sentencing by showing that he or she received ineffective assistance of trial counsel. *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44.

¶42 To establish ineffective assistance, a defendant must prove: (1) that trial counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Id.*, ¶85. To prove deficient performance, a defendant must show that trial counsel's performance fell outside the wide range of professionally competent assistance. *Id.*, ¶88. To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, ¶95. In the plea withdrawal context, this requires a defendant to show that absent counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *State v. Cooper*, 2019 WI 73, ¶29, 387 Wis. 2d 439, 929 N.W.2d 192.

¶43 An ineffective assistance of counsel claim presents a mixed question of fact and law. *Id.*, ¶14. We will uphold the circuit court's factual findings unless they are clearly erroneous. *Id.* However, whether the facts demonstrate that counsel's performance was deficient and prejudicial are questions of law that we review independently. *Id.*

¶44 Here, Kundilovski argues Schlough was ineffective by failing to use an interpreter when meeting with him outside of court, by failing to "retain an expert to establish … Kundilovski's language limitations," and by incorrectly informing Kundilovski that he was likely to receive sentences totaling only three to seven

16

years. Based on the circuit court's factual findings, we conclude Kundilovski has failed to establish that Schlough performed deficiently in any of these respects.

¶45 As discussed above, the circuit court found that during Schlough and Kundilovski's out-of-court discussions, Schlough was able to ensure that Kundilovski understood the maximum penalties for his offenses and that the court was not bound by any sentence recommendations. Schlough testified he did so by explaining those concepts as simply as possible in English and by using translation software when necessary. Schlough also testified that he believed Kundilovski understood him, and the court accepted his testimony in that regard. Schlough further testified that he explained the concept of consecutive sentences to Kundilovski, and Kundilovski seemed to understand it.[1] Kundilovski himself testified that he did not ask for an interpreter when speaking with Schlough as he did not think an interpreter "could help [him] in any way." Under these circumstances, Schlough could reasonably conclude it not was necessary to retain either an interpreter or an expert to assess Kundilovski's language comprehension. Schlough's failure to take those actions thus did not fall outside the wide range of professionally competent assistance and, as such, did not constitute deficient performance.

¶46 Nor did Schlough deficiently mislead Kundilovski into believing he would receive sentences totaling only three to seven years. The circuit court found

---

[1] Although Schlough acknowledged he had told postconviction counsel that he was not "one hundred percent sure whether … Kundilovski understood what consecutive sentencing meant," it is clear the circuit court implicitly found that Kundilovski understood that concept. Moreover, Schlough later testified that although he had explained the concept of judicial sentencing discretion to Kundilovski and believed Kundilovski understood that concept, he could not "say for sure [whether Kundilovski understood] because I'm not … Kundilovski." It appears likely that when Schlough told postconviction counsel he was not one hundred percent sure whether Kundilovski understood the concept of consecutive sentencing, he similarly meant that he could not say for certain whether Kundilovski understood that concept because he is not Kundilovski.

17

that Schlough merely provided Kundilovski with an estimate of the likely length of his sentences. The court thus implicitly found that Schlough did not guarantee or promise that Kundilovski's sentences would not exceed three to seven years. While Schlough's prediction turned out to be incorrect, Schlough testified it was based on his consultation with an individual who wrote private PSIs and had previously prepared PSIs for the DOC. Kundilovski does not develop any argument on appeal that Schlough's reliance on that individual's opinion was unreasonable.

¶47 Kundilovski has also failed to establish that he suffered prejudice as a result of Schlough's allegedly deficient performance. While Kundilovski testified he would not have entered his pleas had he known that the circuit court could impose the maximum sentences, the court did not find his testimony to be credible. The court instead found that Kundilovski was informed—and understood—both the maximum penalties for his offenses and that the court was not bound by the parties' sentence recommendations. The court also implicitly found that Schlough never promised Kundilovski that his sentences would not exceed three to seven years.

¶48 On these facts, Kundilovski has failed to establish that absent Schlough's allegedly deficient performance, he would not have pled guilty and would have insisted on going to trial. The facts instead show that Kundilovski was informed and understood that the court could impose the maximum penalties, and he nevertheless accepted the State's plea offer. The court therefore properly rejected Kundilovski's ineffective assistance claim.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

18